1
JESSICA LINEHAN  SBN 223569
Dorsey & Whitney LLP
2
600 Anton Boulevard, Suite 2000
Costa Mesa, CA 92626
3
Telephone:   (714) 800-1400
Facsimile:   (714) 800-1499
4
E-Mail:      linehan.jessica@dorsey.com

5
EDWARD B. MAGARIAN
Admitted in State of Minnesota SBN 208796
6
Pro hac vice motion pending
SAM BOLSTAD
7
Admitted in State of Minnesota SBN 397387
Pro hac vice motion pending
8
Dorsey & Whitney LLP
50 South Sixth Street, Suite 1500
9
Minneapolis, MN  55402
Telephone:   (612) 340-2600
10
Facsimile:   (612) 340-2868
E-Mail:      magarian.edward@dorsey.com
11
E-Mail:      bolstad.sam@dorsey.com
*Attorneys for Plaintiff U.S. Bank National*
12
*Association*

13
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
14

15
U.S. Bank National Association,

16
                    Plaintiff,

17
v.

18
Cresset Capital Management,
Cresset Asset Management
19
Cresset Family Office, and
Michael Cole,
20
                    Defendants.
21

22

23

24

25

26

27

28

CASE NO.

**U.S. BANK'S MOTION FOR TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, PRELIMINARY INJUNCTION**

Judge [To Be Assigned]

Courtroom No. [To Be Assigned]

Proposed Hearing: [To Be Determined]

-1-

EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, PRELIMINARY
INJUNCTION

## NOTICE AND MOTION

TO THE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that as soon as the matter can be heard by the Court in the above-titled Court, located at 450 Golden Gate Avenue, San Francisco, California, Plaintiff U.S. Bank National Association ("U.S. Bank") will present its Motion for a Temporary Restraining Order, or in the alternative, Preliminary Injunction.

1. U.S. Bank hereby moves the Court to enter a temporary restraining order or, in the alternative, a motion for preliminary injunction, without the need for a bond, and pending a hearing and ruling on U.S. Bank's request for permanent injunctive relief, as follows:

a. enjoining Defendants Cresset Capital Management, Cresset Asset Management, Cresset Family Office and Michael Cole (collectively "Defendants"), and all persons in active concert or participation with them (including any persons employed by Defendants), from directly or indirectly engaging in any further business activities to the extent that Cresset's business is based upon or uses U.S. Bank Confidential Information.

b. enjoining Defendants, and all persons in active concert or participation with them (including any persons employed by Defendants), from any further activities in violation of his contractual, statutory, and common law obligations and duties to U.S. Bank, and from any use, possession, or disclosure of U.S. Bank's confidential and proprietary information or trade secrets;

c. ordering that Defendants surrender all devices to which any U.S. Bank Confidential Information was ever transmitted or on which it was stored (including but not limited to computers, laptops, tablets, cell phones, smartphones, PDAs, servers, hard drives, cloud storage systems, jump drives, zip drives, flash drives, USB drives, and other electronic storage devices that are owned by, controlled by, or in the possession of Defendants) for forensic imaging and inspection, and to delete from said devices any remaining U.S. Bank Confidential Information;

d. ordering Defendants, and all persons in active concert or participation with them, to immediately return any U.S. Bank confidential and proprietary information and trade secrets and

1   enjoining Defendants from the use, possession, or disclosure of U.S. Bank's confidential and

2   proprietary information or trade secrets;

3          e.   ordering Defendants and all those in active concert with them to return to U.S. Bank

4   information, property, data, and documents belonging to U.S. Bank or prepared using U.S. Bank's

5   data and then to remove any such materials from his files, devices, and systems; and

6          f.   ordering Defendants to account to U.S. Bank by identifying any and all persons or

7   entities to whom Defendants disseminated U.S. Bank's property;

8       This motion is based upon this Notice and Motion; the attached Plaintiff's Memorandum

9   of Points and Authorities in Support of its Application for Temporary Restraining Order, or in the

10   Alternative, Preliminary Injunction; the Verified Complaint and all Exhibits (those under seal and

11   those not under seal); the Affidavit of Steven Shakespeare; the Proposed Order, and other matters

12   that may be presented at the hearing.

13

14       Dated:  September 28, 2018           DORSEY & WHITNEY LLP

15

16                              By  */s/ Jessica Linehan*_____
                              JESSICA LINEHAN  SBN 223569

17

18                              *Attorneys for Plaintiff U.S. Bank National
                              Association*

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     Factual background ...............................................................................................2

    A.      Cole's Job Duties, Fiduciary Duties, and Contractual Duties ................................2

    B.      Misappropriation of Confidential Information for Cresset......................................3

    C.      U.S. Bank Takes Reasonable Steps to Protects its Trade Secrets.........................14

    D.      Solicitation of Fellow U.S. Bank Employees ......................................................15

    E.      Further Misappropriation of Confidential Information and Multiple Departure of Fellow Employees; Defendants' Misuse of Confidential Information .......................................................................................................16

    F.      U.S. Bank Corresponds with Defendants ...........................................................17

III.    Argument ...........................................................................................................18

    A.      Legal Standard ..................................................................................................18

    B.      U.S. Bank is Likely to Succeed on the Merits of its Claims................................18

        1.      U.S. Bank is Likely to Succeed on the Merits of its Claim for Misappropriation of Trade Secrets in Violation of State and Federal Law. ...................................................................................................19

        2.      U.S. Bank is Likely to Succeed on the Merits of its Claims for Breach of Fiduciary Duty.............................................................................22

    C.      U.S. Bank will Suffer Immediate and Irreparable Harm if Injunctive Relief is Not Granted. .................................................................................................22

    D.      The Balance of Harms Tips in Favor of U.S. Bank. ............................................23

    E.      Injunction is in the Public Interest. ....................................................................25

IV.     Conclusion .........................................................................................................25

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*Alliance for the Wild Rockies v. Cottrell*,
    632 F.3d 1127 (9th Cir. 2011) ....................................................................................18

4

5

*Bancroft-Whitney Co. v. Glen*,
    64 Cal. 2d 327 (1966) ...............................................................................................22

6

*Dexon Computer, Inc. v. Modern Enterp. Solutions, Inc.*,
    No. 27-CV-15-17171 (Minn. Dist. Ct., Henn. Cty. Dec. 28, 2015) ........................24

7

8

*Earthbound Corp. v. MiTek USA, Inc.*,
    No. C16-1150 RSM, 2016 U.S. Dist. LEXIS 110960 ............................................24

9

10

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
    No. 2:13-cv-00784-MCE-DAD, 2013 U.S. Dist. LEXIS 70098 (E.D. Cal. May
    16, 2013) .................................................................................................................25

11

12

*Founder Starcoin, Inc. v. Launch Labs., Inc.*,
    2018 U.S. Dist. LEXIS 113737 (S.D. Cal. July 9, 2018) .......................................19

13

14

*Fowler v. Varian Assocs., Inc.*,
    196 Cal. App. 3d 34 (1987) ....................................................................................22

15

*GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs.*,
    83 Cal. App. 4th 409 (2000), *overruled on other grounds by Reeves v. Hanlon*,
    33 Cal. 4th 1140 (2004) ..........................................................................................22

16

17

*Gable-Leigh, Inc. v. North Am. Miss*,
    2001 U.S. Dist. LEXIS 25614 (C.D. Cal. Apr. 9, 2001) .......................................20

18

19

*Global Med. Solutions, Ltd. v. Simon*,
    2013 U.S. Dist. LEXIS 201502 (C.D. Cal. Sept. 24, 2013).....................................22

20

21

*H.Q. Milton, Inc. v. Webster*,
    No. 17-cv-06598-PJH, 2017 U.S. Dist. LEXIS 193646 (N.D. Cal. Nov. 22,
    2017) ..................................................................................................................23, 24

22

23

*Henry Schein, Inc. v. Cook*,
    191 F. Supp. 3d 1072 (N.D. Cal. 2016) ......................................................20, 21, 25

24

*Johnson v. Couturier*,
    572 F.3d 1067 (9th Cir. 2009) ................................................................................25

25

26

*Krapf Bus. Sys. v. Magnacontrol Corp.*,
    No. IP 79-334-C, 1979 U.S. Dist. LEXIS 10894 (S.D. Ind. July 19, 1979)............21

27

28

*League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton,*
    752 F.3d 755 (9th Cir. 2014) ...............................................................................................23

*Morlife, Inc. v. Perry,*
    56 Cal. App. 4th 1514 (1997) ..............................................................................................21

*Netlist Inc. v. Diablo Techs., Inc.,*
    2015 U.S. Dist. LEXIS 3285 (N.D. Cal. Jan. 12, 2015) ......................................................25

*Network Automation, Inc. v. Advanced Sys. Concepts, Inc.,*
    638 F.3d 1137 (9th Cir. 2011) ............................................................................................18

*Frankl ex rel. NLRB v. HTH Corp.,*
    650 F.3d 1334 (9th Cir. 2011) ............................................................................................19

*Pac. Growth Holdings v. Vollen,*
    2008 Cal. Super. LEXIS 10600 ...........................................................................................20

*ReadyLink Healthcare v. Cotton,*
    126 Cal. App. 4th 1006 (2005) ............................................................................................21

*Richmond Techs., Inc. v. Aumtech Bus. Sols.,*
    11-02460C, 2011 U.S. Dist. LEXIS 71269, 2011 WL 2607158 (N.D. Cal. July
    1, 2011) ...............................................................................................................................23

*Seed Servs., Inc. v. Winsor Grain, Inc.*
    868 F. Supp. 2d 998 (E.D. Cal. 2012).............................................................................18, 25

*Stanley v. Richmond,*
    35 Cal. App. 4th 1070 (1995) ..............................................................................................22

*Stokes v. Dole Nut Co.,*
    41 Cal. App. 4th 285 (1995) ................................................................................................22

*Sunbelt Rentals, Inc. v. Victor,*
    No. C 13-4240.....................................................................................................................19

*University of Texas v. Camenisch,*
    451 U.S. 390 (1981).............................................................................................................19

*Waymo LLC v. Uber Techs., Inc.,*
    2017 U.S. Dist. LEXIS 73843 (N.D. Cal. May 15, 2017) ....................................................19

*Winter v. Natural Res. Def. Council, Inc.,*
    555 U.S. 7 (2008).............................................................................................................22, 23

I.      INTRODUCTION

U.S. Bank comes to this Court as the victim of theft and misappropriation carried out by Defendants Cresset Capital Management, Cresset Asset Management, Cresset Family Office (collectively "Cresset") and Cresset Family Office CEO Michael Cole, in concert with others, in violation of state and federal law.  These violations began when Michael Cole began working for Cresset's benefit while he was still President of Ascent Private Capital Management, a division of U.S. Bank ("Ascent" or "U.S. Bank"), a position Cole held until June 29, 2018.  The primary target of Defendants' misconduct was, and is, U.S. Bank's trade secrets.

Cresset Capital Management was formed approximately one year ago by two rival investment banking firms in Chicago, Illinois with plans to grow and expand their business.  One of Cresset Capital Management's target areas was providing wealth management advice to high net worth clients.  Prior to overtly hiring Cole as CEO to start-up Cresset Family Office, Cresset Capital Management had not yet officially entered the market of providing multi-generational high net worth clients with wealth management advice.  Unlike Cresset, Plaintiff U.S. Bank had long been providing these services through Ascent  not only in San Francisco but in select other cities.

Instead of doing what other firms have done—working hard to build their business and brand—Cole and Cresset Capital Management took wrongful shortcuts.  Cresset and its private equity investors entered into discussions with Cole, in approximately April 2018, while Cole was still the President of Ascent.  Shortly thereafter, Cole, while President of Ascent, began working on behalf of Cresset while, at the same time, accessing and using U.S. Bank's confidential information ("Confidential Information") and soliciting its employees, for Cresset's benefit.

U.S. Bank's Confidential Information has been developed by U.S. Bank through significant time and financial investments.  It is not readily ascertainable by proper means to others because U.S. Bank has taken numerous steps to protect its secrecy.  It derives economic value from the fact that it is not known to others who can obtain economic value from its disclosure.

Cole began to steal U.S. Bank's Confidential Information from Ascent and funnel it to what would become his new employer through, among other things, one or more strategic briefings.

Thereafter, Cole, again while President of Ascent, began large scale downloading that included key Ascent Confidential Information in the month he left Ascent, and soliciting employees to join him at the Cresset Family Office—a business he created using U.S. Bank Confidential Information. Cole not only took steps along the way to conceal his wrongdoing, but when U.S. Bank raised suspicions just last month, Cresset and Cole, through lawyers, denied either using any Ascent Confidential Information or soliciting employees while Cole was still employed at Ascent. These denials were false, and further evidence of a cover-up.

In sum, while President of Ascent, Cole acted as an agent for the benefit of Cresset and to the detriment of Ascent, the company to whom he owed a fiduciary duty.  Cresset and Cole used Ascent Confidential Information to enter the market as the Cresset Family Office, to build the Cresset Family Office, and to solicit customers and employees away from Ascent.  Accordingly, U.S. Bank seeks a temporary restraining order, or in the alternative a preliminary injunction, to enjoin Defendants from engaging in further misconduct.

## II.    FACTUAL BACKGROUND

### A.    Cole's Job Duties, Fiduciary Duties, and Contractual Duties

Cole began his employment with U.S. Bank on or around June 18, 2010 and worked as the President of Ascent out of Ascent's San Francisco office.  Verified Complaint ("VC"), ¶ 20.  Ascent provides multi-generational wealth management services to families with significant assets to advise those families on how to preserve and develop their assets.  VC, ¶ 21.  For nearly eight years, Michael Cole was the President and the face of Ascent.  As President, Cole gave public speeches and interviews discussing wealth management issues on behalf of Ascent.  As Cole described in his LinkedIn profile, "In my role at Ascent, I lead our business that distinctively helps families of exceptional net worth manage their wealth strategically to achieve their current and multi-generational goals."  Behind the scenes, Cole was responsible for the business's strategic direction and overall management, including supervising and managing Ascent's employees. VC, ¶¶ 1-2, 22.

Cole was subject to U.S. Bank's policies designed to maintain the confidentiality of the Confidential Information.  VC, ¶ 26.  On June 18, 2010, Cole himself signed a Confidentiality and

Non-Solicitation Agreement with U.S. Bank.  A true and correct copy of Cole's Agreement is attached as Exhibit 1 to the Verified Complaint. VC, ¶ 28.  In Cole's Confidentiality and Non-Solicitation Agreement, he contractually bound himself to respect U.S. Bank's Confidential Information, which he acknowledged U.S. Bank takes reasonable efforts to keep confidential.  Ex. 1, ¶¶ 1-4 to the Verified Complaint.  VC, ¶ 29.  Cole's Confidentiality and Non-Solicitation Agreement also prohibits him—during his term of employment and for one year thereafter—from using U.S. Bank's Confidential Information to solicit U.S. Bank customers, prospective customers, and fellow U.S. Bank employees to leave U.S. Bank.  Ex. 1, ¶¶ 5-6 to the VC; and VC, ¶ 30.

**B.   Misappropriation of Confidential Information for Cresset**

Prior to hiring Cole, Cresset was not engaged in the business of providing multi-generational wealth management services to families with significant assets in competition with Ascent.  Cole reached an agreement with Cresset, while still employed by U.S. Bank, to publicly serve as CEO of Cresset and establish this wealth management business for Cresset in California and other states after he formally ended his employment with U.S. Bank. VC, ¶¶ 2, 31.  To date, Cresset has expanded its presence by copying Ascent's geographic footprint in San Francisco, Seattle, and Denver. VC, ¶ 2.

Cole first conducted an internet search for Cresset Wealth Advisors on his Ascent laptop on April 11, 2018, at 13:44:20.  Affidavit of Steven Shakespeare, Jr., ¶ 3 ("SA").  Cole then accessed Cresset Capital Management's website and reviewed it until at least 13:52:12.  *Id.*  Immediately thereafter, Cole accessed Ascent documents, including two documents containing Confidential Information.  *Id.* ¶ 5.  The first document, titled "Copy 2018 Plan Ascent by group_03.05.18," is a spreadsheet containing detailed financial performance data for Ascent in various markets throughout the United States, including, among others, San Francisco, Denver, and Seattle.  *See id.* Filed under seal as Exhibit 2 to the Verified Complaint is a true and correct copy of that document. The second, titled "2018 Business Line and RMD Performances Objectives," discusses Ascent's strategic goals and priorities for the year.  *See id.*  Filed under seal as Exhibit 3 to the Verified Complaint is a true and correct copy of that document.  Shortly thereafter on April 11, 2018, Cole

accessed a document titled "Ascent Performance 06.21.17.pptx", which is a PowerPoint detailing Ascent's five-year financial historical performance, broken down by categories of assets under management, deposits, loans, revenue growth, Producer Price Index growth, all of which is further broken down across Ascent's various offices.  *See id.*  Filed under seal as Exhibit 4 to the Verified Complaint is a true and correct copy of that document.  Further evidencing that his access to these documents was related to his impending departure, Cole then accessed, a few minutes later, two versions of his bio – one dated July 31, 2017, and one dated April 11, 2018.  *See id.*  Attached to the Verified Complaint as Exhibit 5 and 6 are a true and correct copy of his respective bios.  VC, ¶ 32.

Cole continued to access historical Ascent Confidential Information.  For example, Cole accessed on April 13, 2018 a file titled "AUM Flows by year 2015-17.pdf".  This document provides an analysis of Ascent's asset under management by year, amounts and change from 2015-2017.  Cole did not access this document on April 12 and 13, 2018 for a valid business purpose.  Filed under seal as Exhibit 7 to the Verified Complaint is a true and correct copy of this document.  VC, ¶ 33; SA ¶ 5.

In the course of reaching an agreement with Cresset, and while still employed and compensated by Ascent, Cole misappropriated Ascent's Confidential Information and, with Cresset's full knowledge, consent and encouragement, held a meeting on May 17, 2018, with Cresset where he discussed with Cresset his strategic plan for Cresset Family Office using Ascent's Confidential Information.  This May 17 meeting started at approximately 7:30 a.m. and lasted until approximately 1:30 p.m.  The strategy session occurred offsite at a hotel—the Vitale Hotel.  Cole concealed the true nature of the meeting from Ascent, and noted on his calendar nothing more than: "BLOCK 7:30-1:00 | Private Prospect Meeting."  SA ¶ 4.  This calendar entry was a lie, and designed to cover his illegal misconduct.  Cole possessed an agenda for his meeting with Cresset, which notably addressed "Marketing/Business Development" and "Financial Model" for Cresset— topics for which Cole had already and would soon misappropriate additional Confidential Information and solicit Ascent employees.  Also of particular note is the last item on the agenda:

-4-

"Lunch – Ascent Private Capital Management," a discussion point whereby he discussed with Cresset the targeting of Ascent.  In a further attempt to conceal his illegal conduct, Cole attempted to delete the agenda from his Ascent laptop, but U.S. Bank recovered the agenda from the laptop's cached files.  Attached as Exhibit 8 is a true and correct copy of the agenda for Cole's meeting with Cresset, which was retrieved from the deleted but cached files on Cole's Ascent laptop.  VC, ¶ 34; SA ¶ 6.

In preparation for Cole's pitch to Cresset on May 17, 2018, Cole created a titled, "Cresset Family Office—Strategic Planning Session."  *See* SA ¶ 6.  Filed under seal as Exhibit 9 to the Verified Complaint is a true and correct copy of the Cresset Family Office—Strategic Planning Session PowerPoint.  In the course of preparing this Strategic Planning Session PowerPoint for Cresset, Cole misappropriated Ascent Confidential Information. For example, Cole misappropriated the "Ascent Placemat," a document describing Ascent's client services, electronically titled "1028-GC_PlacematFamilyEnterprise_Efile-1.pdf".  *See id.* ¶ 5.  Filed under seal as Exhibit 10 to the Verified Complaint is a true and correct copy of  the Ascent Placemat. Cole accessed that file on May 10, 2018, at 14:16.  **Cole used that exact information in the Cresset Family Office—Strategic Planning Session PowerPoint.**  *Compare* Ex. 9, slide 17, *with* Ex. 10.  VC, ¶¶ 35-36.

Cole also used Ascent's membership to the Family Office Exchange ("FOX") to misappropriate the analysis of industry data and analytics for his Cresset Family Office—Strategic Planning Session PowerPoint. *See* Ex. 9, slides 7 and 10-14.  Ascent pays $72,000 per year for its FOX membership, which includes access to this analysis.  Cole's use of Ascent's FOX membership for purposes of Cresset was an abuse of his access to Ascent's resources, and violated U.S. Bank's agreement with FOX that limits the information to U.S. Bank's use, and "any unauthorized reproduction, distribution, or electronic posting is prohibited."  VC, ¶ 37.

Cole also emailed Confidential Information to his personal email account, macslo4246@gmail.com, via his U.S. Bank email account.  For example, on May 14, 2018, Cole transmitted to his personal email account a spreadsheet containing Ascent's Five-Year Family

Office Model, including line-by-line itemizations of Ascent's revenue and budgetary information. Filed under seal as Exhibit 11 to the Verified Complaint is a true and correct copy of the email and attached spreadsheet containing Ascent's Five-Year Family Office Model. ***Cole used that exact information in the Cresset Family Office—Strategic Planning Session PowerPoint.*** *Compare* Ex. 9, slides 27-30, *with* Ex. 10. ***Of particular note, Cole matched his proposed compensation estimates for Cresset Family Office's positions to the exact same levels as provided in Ascent's Five-Year Family Office Model.*** *Compare* Ex. 9 slides 27 and 29, *with* Ex. 10. VC, ¶ 38.

To similar effect, Cole accessed numerous other documents which included Confidential Information to prepare for his meeting on May 17, 2018, with Cresset. VC, ¶ 39; SA ¶ 5. For example, Cole accessed:

a.  A chart titled "Ascent Team– Names and Titles", which was expressly marked as "Internal Use Only," a true and correct copy of which is filed under seal as Exhibit 12 to the Verified Complaint. This document, accessed on May 10 and 15, 2018, provides a detailed Ascent organizational chart by name and position.

b.  The Ascent 2017 Front Office Review Guidelines, which was expressly marked as "Internal Use Only," a true and correct copy of which is filed under seal as Exhibit 13 to the Verified Complaint. This document, accessed on May 14, 2018, is electronically titled: "Cini Front Office Review Materials 2017_Day 2.pdf". The Ascent 2017 Front Office Review Guidelines describe Ascent's protocol and areas of analysis when evaluating a regional office—information directly relevant to Defendants' establishment of new Cresset offices via the misappropriated Confidential Information. **As detailed further below, Cole again accessed this same document once again on June 20, 2018—only days before his departure— and did so minutes before inserting a USB flash drive into his computer for no purpose other than to misappropriate the Confidential Information.** SA ¶¶5, 7.

c.  Ascent's Five-Year Family Office Model, dated May 11, 2018, a true and correct copy of which is filed under seal as Exhibit 11 to the Verified Complaint, and which

-6-

Cole had emailed to himself two days prior. This document contains line-by-line itemizations of Ascent's revenue and budgetary information, and was accessed on May 16, 2018;

d.  The MAC Deck for PPI, dated July 31 and August 25, 2017, a true and correct copy of which is filed under seal as Exhibit 14 to the Verified Complaint.  The two decks contain financial information and analysis, information from the FOX survey and questions and analysis to facilitate strategic discussion, and was accessed when Cole was exploring Cresset in April 2018, and again on May 10 and 16, 2018, the days before his strategy presentation to Cresset.

e.  FOX Webinar on How Clients Employees and Pricing are Transforming the UW Business, a true and correct copy of which is filed under seal as Exhibit 15 to the Verified Complaint, and was accessed on May 10 and 16, 2018.  This document contains, among other things, proprietary information purchased by U.S. Bank through its FOX subscription, and incorporated into the Cresset Powerpoint. *Compare* Exhibit 15, slide 17 *with* Exhibit 9, slide 7; *Compare* Exhibit 15, slide 18 *with* Exhibit 9, slide 9; *Compare* Exhibit 15, slide 21 *with* Exhibit 9, slide 10; *Compare* Exhibit 15, slide 22 *with* Exhibit 9, slide 11; *Compare* Exhibit 15 slide 23 *with* Exhibit 9, slide 12; *Compare* Exhibit 15, slide 38 *with* Exhibit 9, slide 13; *Compare* Exhibit 15, slide 40 *with* Exhibit 9, slide 14.

f.  Ascent's Executive Position Market Data Review 2017 (Updated 10_23_17).xlsx**,** a true and correct copy of which is filed under seal as Exhibit 16 to the Verified Complaint, and was accessed at the time Cole was exploring Cresset, and again on May 16, 2018 the day before his strategy presentation to Cresset.  He similarly accessed a Copy of Ascent's Executive Position Market Data Review 2017 (Updated 10_23_17) MAC 04.13.18.xlsx on the same days. This document has two versions accessed approximately one hour apart that include detailed information

1  about U.S. Bank salaries, compensation packages, recommendations for changes to

2  compensation, broken down by position and employees.

3  g.  McLagan 2017 Compensation Survey, a true and correct copy of which is filed

4  under seal as Exhibit 17 to the Verified Complaint, and was accessed on May 16,

5  2018.  This was a project that Ascent commissioned that compares Ascent salary

6  and cash compenation with the market.

7  h.  Pipeline Ledger dated April 19, 2018, a true and correct copy of which is filed under

8  seal as Exhibit 18 to the Verified Complaint, and was accessed on May 16, 2016.

9  This document identifies clients and prospective clients, and specific information

10  about those clients and prospective clients gathered by Ascent, including

11  information about their account, types of services in which they are interested,

12  referring parties, and status.

13  Cole did not access these documents with a valid business purpose.  VC, ¶ 39.

14  Cole's access of Confidential Information continued throughout May and June 2018, as he

15  continued to prepare for his departure for Cresset.  For example, among others, Cole accessed on

16  June 4, 2018 at 10:41, a file titled "Ascent Front Office Review_RevOps.pptx".  That file is a

17  PowerPoint that is expressly designated, "For U.S. Bank Internal Use Only | Not for distribution to

18  or inspection by any non-U.S. Bank employee or the general public."  The PowerPoint analyzes

19  Ascent's operational efficiency and effectiveness, and lays out specific monthly plans for 2018.

20  Filed under seal as Exhibit 19 to the Verified Complaint is a true and correct copy of that document.

21  Cole had no valid business reason to access this file on June 4, 2018.  VC, ¶ 40; SA ¶ 5.

22  Another file accessed on June 4, 2018 at 10:48, was a file titled, "June Meeting Materials

23  2018," which is a PowerPoint providing details on Ascent's recruiting model and resources, a

24  detailed breakdown of Ascent's financial performance, Ascent's upcoming strategies and growth

25  plan, and employee survey results.  This file related to a meeting on June 1, 2018.  Cole had no

26  valid business reason to access this file on June 4, 2018 in the context of the other documents he

27  was accessing at that time, and only three weeks from his termination.  The document has multiple

28

confidentiality designations, including, "For U.S. Bank Internal Use Only | Not for distribution to or inspection by any non-U.S. Bank employee or the general public," "Internal Use Only," "Confidential," and "U.S. Bancorp Confidential."  Filed under seal as Exhibit 20 to the Verified Complaint is a true and correct copy of that document.  VC, ¶ 41; SA ¶ 5.

In addition, Cole accessed on June 4, 2018 at 10:53, a file titled ARS Report – 201804 Seattle.pdf."  ARS is short for Ascent Relationship Summary.  The file is an in-depth document detailing Ascent's relationships with its Seattle customers and their assets entrusted to Ascent, including breakdowns by name, type, revenue, value, and more.  Cole had no valid business reason to access this file, and did so for the purpose of targeting Ascent's Seattle office.  Filed under seal as Exhibit 21 to the Verified Complaint is a true and correct copy of this document.  VC, ¶ 42; SA ¶ 5.

By way of further example, Cole accessed on June 4, 2018 at 14:00 a file titled "18-0420_Ascent_Career Guide_Internal_FINAL BOOK EDITS.pdf." This document, expressly designated as "U.S. Bank Confidential," details Ascent's working model, the roles of each job position, and has in-depth descriptions about Ascent's incentive plans and how they work.  Cole had no valid business reason to access this file on June 11, 2018.  Filed under seal as Exhibit 22 to the Verified Complaint is a true and correct copy of the document.  VC, ¶ 43; SA ¶ 5.

Cole also accessed another document June 4, 2018 at 14:31, titled "Minneapolis Office Model - Sub Team Reorganization_05292018."  That document is a Power Point that is expressly designated "Internal Use Only," which details the organizational structure, multi-phase implementation plan, and forecasted financial performance for opening a new office.  Filed under seal as Exhibit 23 to the Complaint is a true and correct copy of that document.  Cole accessed this file in May 2018.  However, Cole then, again accessed this filed on June 4, 2018.  He did so without a valid business reason, in the context of his other computer activity and impending departure, especially where he originally accessed this document on May 18, 2018.  VC, ¶ 44; SA ¶ 5.

Then, on June 11 and 12, 2018, only days before Cole announced his intention to resign from Ascent at the end of the month and likely anticipating that he might be immediately terminated

upon announcing his intention to resign, Cole accessed numerous files, including those containing Confidential Information. Many of those files contained detailed information on Ascent customers and their assets, a PowerPoint file on office models and organizational structure, Ascent's internal career guide and thematic portfolio, and monthly performance reports. This was done shortly before Cole first inserted a USB flash drive for the first time in nearly 18 months, a process that would play itself out multiple times in June. VC, ¶ 45; SA ¶ 5, 7.

Cole accessed a document at 11:09 on June 11, 2018, titled "Apr 2018 Ascent CAR summary." CAR is short for Credit Administrative Reports. This document, which is expressly designated as "U.S. Bank Customer Confidential," is a spreadsheet detailing the outstanding balances due, tracked by type of credit, time past due date, exceptions, audits, and more. Cole had no valid business reason to access this file on June 11, 2018. Filed under seal as Exhibit 24 to the Verified Complaint is a true and correct copy of that document. VC, ¶ 46; SA ¶ 5.

Cole accessed another document at 12:01 on June 11, 2018, titled "Ascent Market Level 0518_Financials_20180607." This document is a detailed spreadsheet comparing Ascent's actual versus planned financial performance, broken down by streams of revenue and expenses, further broken down by Ascent's various offices. Cole did not access this file for any valid business reason on June 11, 2018. Filed under seal as Exhibit 25 to the Verified Complaint is a true and correct copy of that document. VC, ¶ 47; SA ¶ 5.

On June 11, 2018, at 12:41, Cole inserted a USB device into his Ascent laptop which was done for no valid business purpose. The USB device remained inserted until 12:54 for no purpose other than to download files which Cole accessed. VC, ¶ 48; SA ¶ 7. Cole then (once again) accessed on June 11, 2018, multiple versions of his bio from 12:57 to 13:00. Cole then accessed from 13:50 until 13:55 files titled (1) "UHNW Strategic Planning 091610 v1.ppt"; (2) "UHNW Breakout Session Notes 9.17.10.doc"; (3) "State of Industry Synopsis.ppt"; (4) "Strategic Business Plan 10710 v11.ppt"; and (5) "Strategic Business Plan 092910 v6.ppt". The PowerPoints are clearly marked "internal use only" and relate to a strategic planning presentation, which, along with the notes are confidential to U.S. Bank. They analyze the industry for "Ultra High Net Worth"

1  clients, provide a strategic planning process to develop a team, market your company, and provide

2  services.  The PowerPoints also presents organizational structure and financial forecasts.  These

3  documents are filed under seal as Exhibits 26-30 to the Verified Complaint, respectively. Cole did

4  not access these documents for a valid business purpose.  VC, ¶ 49; SA ¶ 5.

5        He then accessed a number of Ascent templates, more documents that he would not have

6  had a valid business reason to review on June 11, 2018, in connection with any valid business

7  interest in his role as President of Ascent.  Rather, Cole accessed these documents for purposes of

8  his move to Cresset.  Among the documents Cole accessed were four templates of U.S. Bank's

9  confidentiality and non-solicitation agreements.  Specifically, from 15:32 to 15:39 on June 11,

10 2018, Cole accessed two of U.S. Bank's default confidentiality and non-solicitation template, as

11 well as templates specific to California and Colorado.  Those two states have Ascent offices from

12 which employees would eventually resign to join Cresset.  Cole specifically accessed these

13 templates because he was targeting Ascent's employees in those states.  Attached as Exhibit 31 to

14 the Verified Complaint are true and correct copies of these four templates.  VC, ¶ 50; SA ¶ 5.

15       Cole continued to access numerous files on June 12.  Included among those were numerous

16 Ascent financial documents, strategic planning documents, industry analyses, templates of U.S.

17 Bank's confidentiality and non-solicitation agreements, both general templates and other templates

18 specifically for certain jurisdictions.  VC, ¶ 51; SA ¶ 5.  At 10:55 on the same day, Cole accessed

19 a file titled "Copy of Ascent LOB Financials 201805 Preliminary."  That file is a detailed

20 spreadsheet comparing Ascent's actual versus planned financial performance, broken down by

21 streams of revenue and expenses.  Cole had no valid business reason to access this file on June 12,

22 2018.  Filed under seal as Exhibit 32 to the Verified Complaint is a true and correct copy of that

23 document.  VC, ¶ 52; SA ¶ 5.  At 11:01 that day, Cole inserted a different USB device into his

24 Ascent laptop, which remained until 12:56.  SA ¶ 7.  This was done for no valid business purpose,

25 and done for no purpose other than to download files accessed by Cole.  During that timeframe,

26 Cole also accessed a document titled, "Governance overview v8."  That file is a PowerPoint

27 detailing Ascent's strategy for providing its services in the family wealth management industry,

28

-11-

1  including insight on how to structure family governance models and family policy documents.  Cole

2  had no valid business reason to access this file on June 12, 2018.  Filed under seal as Exhibit 33 to

3  the Verified Complaint is a true and correct copy of that document.  VC, ¶ 53; SA ¶ 5.

4      Cole inserted that same USB device again on June 12, 2018, at 13:46 until 18:17.  SA ¶ 7.

5  This was done for no valid business purpose, and for no purpose other than to download files

6  accessed by Cole.  Shortly before and during this time, Cole accessed multiple files including:  (1)

7  Portfolio Prioritization 2018_4.pptx; (2) Strengths and Opportunities_Cole.xls; and (3) 2018 TTUS

8  Meaningful Differences Summary_Cole.xls; and (4) 2018 TTUS Manager Results Summary

9  Template Final.pptx.  The Portfolio Prioritization file is a PowerPoint expressly marked "For U.S.

10  Bank Internal Use Only | Not for distribution to or inspection by any non-U.S. Bank employee or

11  the general public.," and is addressed to Ascent's leadership team, detailing Ascent's strategy for

12  family wealth management services, including current projects being managed by Ascent

13  employees and other projects Ascent would soon be launching.  The Strengths and Opportunities,

14  2018 TTUS Meaningful Differences Summary, 2018 TTUS Manager Results Summary Template

15  Final files are two detailed spreadsheets and a PowerPoint (expressly marked "U.S. Bank

16  Confidential") of individual employee engagement and satisfaction, as well as summary statistical

17  data and analysis.  Cole did not access those documents for a valid business reason at that time.

18  These documents are filed under seal as Exhibits 34-37 to the Verified Complaint.  VC, ¶ 54; SA

19  ¶ 5.

20      Cole thereafter continued to access files through June 20, 2018.  At 8:45 on June 13, 2018,

21  Cole accessed a file titled "Ascent Private Capital Management 20180522."  That file is a

22  PowerPoint much like the file titled "Ascent Performance 06.21.17," but this file goes into further

23  detail of the streams of revenue and expenses across those five years, and also measures Ascent's

24  employee headcounts over that time span broken down by job function and department. Cole had

25  no valid business reason to access this file on June 18, 2018.   Filed under seal as Exhibit 38 to the

26  Verified Complaint is a true and correct copy of that document.  VC, ¶ 55; SA ¶ 5.

27

28

-12-

At 9:00 on June 13, 2018, Cole a accessed a file titled "Ascent Performance 06.21.17." Cole originally accessed the document when he was exploring his relationship with Cresset on April 11, 2018. *See* Exhibit 4. Cole had no valid business reason to access this file that day. At 9:02, Cole accessed a file titled, "MAC All Team Meeting 12.19.17." That file is a PowerPoint, marked "Internal Use Only," detailing Ascent's strategy for family wealth management services. Cole had no valid business reason to access this file on June 13, 2018. Filed under seal as Exhibit 39 to the Verified Complaint is a true and correct copy of that document. VC, ¶¶ 56-57; SA ¶ 5.

Of particular note, from 11:06 to 11:10, Cole accessed at least three files shortly before inserting a USB device for no valid business purpose at 11:12 on June 20, 2018. SA ¶¶ 5, 7. Among those files was a file titled "Appendix F_Final_10.12.17.pdf." This file is Ascent's "Investment Consulting Overview and Frequently Asked Questions" handbook, an in-depth discussion of certain services provided by Ascent. Cole's misappropriation of this file is particularly troubling because it outlines Ascent's strategies in numerous areas of its business, effectively describing in detail Ascent's competitive advantages. Filed under seal as Exhibit 40 to the Verified Complaint is a true and correct copy of that file. Another file that Cole accessed at that time was titled, "Cini Front Office Review Materials 2017_Day 2.pdf." That file contains the "Ascent 2017 Front Office Review Guidelines," which was expressly marked as "Internal Use Only." This was one file initially accessed by Cole during his preparation for the strategy session on May 17, 2018. *See* Exhibit 13. The Ascent 2017 Front Office Review Guidelines describe Ascent's protocol and areas of analysis when evaluating a regional office—information directly relevant to Defendants' establishment of new Cresset offices via the misappropriated Confidential Information. Cole also accessed onboarding materials specific to a new Ascent customer, titled "2017.05.26 [REDACTED] Family Ascent Intro and Discovery.pdf." A true and correct copy of is filed under seal as Exhibit 41 to the Verified Complaint. This document outlines the services Ascent provides to families and its methodology for the onboarding process with new clients. Cole had no valid business reason to access any of these documents. VC, ¶ 58; SA ¶ 5.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR
TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, PRELIMINARY INJUNCTION

1  Cole continued to access files up to and including June 29, 2018—his last day of

2  employment with Ascent.  Of particular note, Cole downloaded a customized list of Ascent

3  customers, complete with the their personal email addresses, home addresses, and phone numbers,

4  on June 25, 2018, at 13:05.  Cole accessed the file again on June 26, 2018, at 11:29.  In an attempt

5  to cover his tracks, Cole deleted the file on June 26, 2018, at 11:32, but the deleted file was cached

6  and recovered during U.S. Bank's investigation.  Filed under seal as Exhibit 42 is a true and correct

7  copy of the Ascent customer contact list misappropriated by Cole.  VC, ¶ 59; SA ¶¶ 5-6.

8  On June 29, 2018, at 9:25, Cole accessed a file titled, "2018-FOX-Multi-Family-Office-

9  and-Wealth-Advisor-Study.pdf."  This document contains, proprietary information purchased by

10  U.S. Bank through its FOX subscription about providing family wealth management services.  Filed

11  under seal as Exhibit 43 to the Verified Complaint is a true and correct copy of that document.  At

12  11:02, Cole again inserted a USB device into his Ascent laptop and it remained inserted until 11:17.

13  Cole inserted this device to download documents he had been accessing.  VC, ¶ 60; SA ¶ 5, 7.

14  Cole had not previously inserted a USB device into his Ascent laptop for approximately one

15  and a half years—since January 11, 2017—but proceeded to insert a USB device with his laptop

16  five times during his last two and one-half weeks with Ascent.  Cole also continued to transmit

17  Ascent files to his personal email account, via his U.S. Bank email account, in the two months

18  leading up to and including June 29, 2018.  Cole was able to access Confidential Information solely

19  due to his position as an employee of Ascent.  He did so while working with Cresset to plan the

20  launch of Cresset's new competitive venture.  VC, ¶¶ 61-63; SA ¶ 7.

21  **C.    U.S. Bank Takes Reasonable Steps to Protects its Trade Secrets.**

22  The Confidential Information misappropriated by Cole constitutes U.S. Bank trade secrets.

23  Cole wrongfully acquired and/or used and/or disclosed trade secrets under the Defend Trade Secrets

24  Act 18 U.S.C. § 1836, which belong to and are proprietary to U.S. Bank and which derive economic

25  value from the fact that they are not known to others who can obtain economic value from their

26  disclosure and which are not readily ascertainable by proper means by others.  VC, ¶ 64.

27

28

U.S. Bank developed these trade secrets through significant time and financial investments. These types of information—as separate components, all together, and/or in combination with other components—are valuable and lucrative assets constituting legally protectable trade secrets. U.S. Bank developed and retains rightful title to these trade secrets. To protect its competitive advantage, U.S. Bank has taken steps to protect its highly confidential, proprietary, and valuable information surrounding its trade secrets. U.S. Bank's trade secrets are related to a product or service used in interstate commerce, namely, wealth management services provided by U.S. Bank to customers across the United States. VC, ¶¶ 65-69.

The information Cole misappropriated is secret, of value, related to a product or service used in, or intended for use in, interstate or foreign commerce, and thus is a trade secret pursuant to 18 U.S.C. § 1836. Cole illegally acquired these trade secrets, and knew or had reason to know that the trade secrets he had access to while working for Ascent were not to be used for any purpose other than working for Ascent. Cole knew or had reason to know that using those trade secrets to compete with Ascent and retaining those trade secrets upon his departure from Ascent exceeded the scope of permissible use of the trade secrets. VC, ¶¶ 70-71.

**D.   Solicitation of Fellow U.S. Bank Employees**

While still employed by Ascent, Cole solicited and made offers to at least one, and likely more, fellow Ascent employee to join him at Cresset. Those employees included at least one Ascent employee who orchestrated the departure to wait a month after Cole's termination and at least one Ascent employee who worked as Managing Director of Ascent and reported directly to Cole. Cole, as President of Ascent, leveraged his confidential access to those direct-report employees and other Confidential Information to improperly solicit those Ascent employees. VC, ¶¶ 72-75.

Specifically, by June 21, 2018, Cole had "unofficially offered" a job at Cresset to Jan Farren, Ascent's Senior Managing Director of Marketing and Communications. Notably, Farren's employment with Cresset would not start at the same time as Cole's but was delayed until after Cole had already left Ascent. Farren is now employed as Cresset's Senior Managing Director of

-15-

Marketing, Communications and Development.  Attached as Exhibit 44 to the Verified Complaint is a true and correct copy of the email wherein Farren describes Cole's offer to her.  VC, ¶ 76.

Cole's last day of employment with Ascent was June 29, 2018.  While still employed with Ascent, Cole was acting putatively as CEO of Cresset, without the knowledge of Ascent.  Shortly after Cole officially departed from Ascent, he began overtly serving as CEO of Cresset.  VC, ¶ 77.

**E.**  **Further Misappropriation of Confidential Information and Multiple Departure of Fellow Employees; Defendants' Misuse of Confidential Information**

On August 3, 2018, at least seven Ascent employees announced their resignation.  Those employees were Jan Farren, Chau Tran, Will Amerine, Scott Winget, Mark Foster, Martim de Arantes Oliveira, and Thomas Crotty.  They were subsequently overtly hired by Cresset on August 3, 2018, or shortly thereafter.  Two others, Rachel Marie Gil and Kristiana Sullivan, announced their resignation soon thereafter by August 30 and September 11, 2018, respectively, to join Cresset.  VC, ¶¶ 78-79.

One or more of these employees were solicited by, and received an offer from Cole and Cresset to join Cresset, while Cole was still employed by U.S. Bank as President of Ascent.  Cole acted as Cresset's eyes, ears, and hands, taking actions and making decisions for the benefit of Cresset and adverse to Ascent, the company he was tasked with leading at the time.  VC, ¶ 80.

All seven employees remained employed by Ascent following Cole's departure.  On information and belief, this was done to deflect suspicion that Cole was engaged in misconduct and to otherwise gather information from Ascent to benefit Cresset.  During the time the employees remained behind at Ascent, at least one of them (a current Cresset employee) misappropriated additional Confidential Information, including a binder of information pertaining to an Ascent customer with whom the employee had worked, solicited Ascent customers using Confidential Information to transfer their accounts to Cresset, and delayed the onboarding process for prospective Ascent customers before redirecting those prospective customers to Cresset.  VC, ¶ 81.

By September 17, 2018, Defendants had used the misappropriated Confidential Information to successfully solicit the Ascent customer to cancel its contract with Ascent and retain Cresset.

-16-

1   Defendants' successful solicitation of the Ascent customer has damaged Ascent. Files relating to
2   other Ascent customers that had been served by the departing employees have also gone missing
3   with the departure of those employees for Cresset, and U.S. Bank's investigation regarding
4   therefore continues. Defendants have used Confidential Information to successfully solicit several
5   Ascent customers and to set up the Cresset Family Office. VC, ¶¶ 82-85.

6       **F.     U.S. Bank Corresponds with Defendants**

7           In light of the multiple departures, U.S. Bank, through outside counsel, wrote to Defendants
8   on August 6, 2018. U.S. Bank informed Defendants that U.S. Bank was investigating whether
9   Defendants had breached their contractual, fiduciary, or statutory duties. U.S. Bank also instructed
10  Defendants to take all reasonable steps to preserve evidence because the matter could result in
11  litigation. VC, ¶ 86. On August 9, 2018, Cresset and Cole collectively responded through outside
12  counsel. They acknowledged that they "know and understand Mr. Cole's post-employment
13  obligations owed to U.S. Bank," and stated that Cole did not take "any action which could be
14  viewed as . . . a misappropriation of trade secrets or a misappropriation of confidential
15  information." Cresset and Cole's representation was false. VC, ¶¶ 87-88. Cresset and Cole
16  represented that "none of those employees who joined Cresset after Mr. Cole did so were contacted
17  by either Mr. Cole or any representative or employee of Cresset before the employees sought out
18  Mr. Cole/Cresset." They further stated that the former U.S. Bank employees who sought to join
19  Cresset "did so without any solicitation by Mr. Cole," and that Cole "has not violated any alleged
20  non-solicitation of customers provision in his Agreement." Defendants' representations were false.
21  VC, ¶¶ 89-90.

22          As noted, Cresset's and Cole's statements in their letter represent further efforts to conceal
23  their illegal wrongdoing. Specifically, they concealed and misrepresented the truth: Cole had
24  misappropriated U.S. Bank's Confidential Information, solicited U.S. Bank's employees while he
25  was still employed by U.S. Bank to join him at Cresset, and in a coordinated effort with the
26  departing employees, solicited U.S. Bank's customers and prospective customers. VC, ¶ 91.

27          Defendants' misappropriation of U.S. Bank's trade secrets by its President and a competitor

28

and Defendants' solicitation of Ascent's customers and prospective customers has irreparably damaged U.S. Bank, and continues to do so.  VC, ¶¶ 92-93.

## III.   ARGUMENT

### A.   <u>Legal Standard</u>

A plaintiff seeking a temporary restraining order or preliminary injunction must establish: (1) that it is likely to succeed on the merits; (2) that it is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in its favor; and (4) that an injunction is in the public interest. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *Seed Servs., Inc. v. Winsor Grain, Inc.* 868 F. Supp. 2d 998, 1001 (E.D. Cal. 2012).

Courts in the Ninth Circuit take a "sliding scale" approach to these four factors, balancing them "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (quotations omitted).

Here, the overwhelming weight of the evidence, based on U.S. Bank's investigation to date, supports the issuance of injunctive relief because the incontrovertible facts show that: (1) U.S. Bank is likely to succeed on the merits of its claims against Cresset and Cole; (2) is likely to sustain irreparable injury if the relief is not granted because of Defendants' unlawful use of its confidential information to power its business model; (3) the balance of hardships tips strongly in favor of U.S. Bank—the victim of its former President and his new Illinois employer; and (4) an injunction is in the public interest of enforcing contractual obligations, protecting confidential information from theft and misappropriation and discouraging unfair competition.

### B.   <u>U.S. Bank is Likely to Succeed on the Merits of its Claims.</u>

The Court should grant a temporary restraining order in this case because U.S. Bank is

-18-

likely to prevail on the merits of its case.  Given the nature and purpose of preliminary injunctions, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. A party thus is not required to prove his case in full at a preliminary-injunction hearing." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Rather, "[l]ikelihood of success" means that success on the merits is "more likely than not." *Frankl ex rel. NLRB v. HTH Corp.*, 650 F.3d 1334, 1365 (9th Cir. 2011).

1. <u>U.S. Bank is Likely to Succeed on the Merits of its Claim for Misappropriation of Trade Secrets in Violation of State and Federal Law.</u>

Cole unlawfully misappropriated U.S. Bank's trade secrets under both the federal Defend Trade Secrets Act ("DTSA") and the California Uniform Trade Secrets Act ("UTSA").  The elements of trade secret misappropriation are effectively the same. *See Vendavo, Inc. v. Price f(x) AG*, 2018 U.S. Dist. LEXIS 48637, at *8 (S.D. Cal. Mar. 23, 2018) ("The elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes."); *Waymo LLC v. Uber Techs., Inc.*, 2017 U.S. Dist. LEXIS 73843, at *22 (N.D. Cal. May 15, 2017) (stating that the federal DTSA and state UTSA "offer essentially the same definitions for our purposes.").  Thus, "federal district courts in California have applied California's trade secret case law to causes of actions brought under the federal DTSA. *Founder Starcoin, Inc. v. Launch Labs., Inc.*, 2018 U.S. Dist. LEXIS 113737, at *10 (S.D. Cal. July 9, 2018).  Under the UTSA, a *prima facie* claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff.  *Sunbelt Rentals, Inc. v. Victor*, No. C 13-4240 SBA, 2014 U.S. Dist. LEXIS 14416, at *14-15 (N.D. Cal. Feb. 4, 2014).

By the facts alleged above, Cole misappropriated a significant amount of Confidential Information, prior to his planned departure from U.S. Bank.  This includes Cole's using Confidential Information in a strategy presentation to Cresset, and his repeated accessing and downloading (to flash drives) information he had no valid business purpose to access in the days

-19-

and weeks before his resignation. This Confidential Information included, among other things, files containing detailed information on Ascent customers and their assets, Ascent employees and compensation, a PowerPoint file on office models and organizational structure, Ascent's internal career guide and thematic portfolio, monthly performance reports, numerous Ascent financial documents, strategic planning documents, industry analyses, templates of U.S. Bank's confidentiality and non-solicitation agreements, files related to U.S. Bank's data with Salesforce and Salesforce Lightning, Ascent financial documents, numerous PowerPoints from Ascent team meetings, additional industry analyses, and educational tools.  *See generally* Verified Complaint.

Given these facts, U.S. Bank has established a likelihood of success on the merits.  *See Gable-Leigh, Inc. v. North Am. Miss*, 2001 U.S. Dist. LEXIS 25614, at *61 (C.D. Cal. Apr. 9, 2001) (finding likelihood of success on the merits where defendants misappropriated customer lists that were found to be protectable trade secrets). Defendants did not just misappropriate customer lists as in *Gable-Leigh*.  They gathered Ascent's blueprint, ranging from its very sensitive trade secrets to internal forms used by Ascent, and did so secretly all in an effort to short-cut the desire of two Illinois private equity investors to start a new business and turn a quick profit.  Cole knew or had reason to know that the trade secrets to which he had access while President of Ascent were not to be used for any purpose other than working for U.S. Bank, and he knew or had reason to know that accessing, downloading and using those trade secrets to compete with U.S. Bank and retaining those trade secrets upon his departure from U.S. Bank exceeded the scope of permissible use of the trade secrets.  Cresset aided and abetted his statutory breach.  *See Pac. Growth Holdings v. Vollen*, 2008 Cal. Super. LEXIS 10600, at *113.

Courts faced with incredibly similar circumstances have enjoined defendants from doing business with any former customer or entity identified in misappropriated confidential information. For example, in *Henry Schein, Inc. v. Cook*, an employee misappropriated her employer's confidential, proprietary, and trade secret information prior to resigning to begin working for a competing company.  *Id.*, 191 F. Supp. 3d 1072, 1075 (N.D. Cal. 2016).  Before she resigned, she forwarded that information from her work email account to her personal email, entered her

1   employer's network to access and download information, and failed to return that information when

2   she resigned.  *Id.*  She solicited her employer's customers and attempted to delete evidence of her

3   misconduct.  *Id.*  The United States District Court for the Northern District of California enjoined

4   the employee-defendant "and all those acting in concert or participation with her" from "directly

5   or indirectly soliciting, continuing to solicit, initiating contact with, or ***accepting business from,***

6   ***any [of the employer's] customers*** whose accounts were assigned to [the employee] while she was

7   employed by [her former employer]."  *Id.* at 1079-80 (emphasis added).

8          By way of further example, where a former employee misappropriated his former

9   employer's confidential information "to form his own company in competition" and solicited other

10  employees "to staff his company" the California Court of Appeals affirmed an injunction requiring

11  the former employee to "[c]ease and desist and refrain from engaging in any solicitation of [the

12  former employer's] employees, or agents, nurses, or remote recruiters, . . . [and customers] under

13  contract with [the former employer]."  *ReadyLink Healthcare v. Cotton*, 126 Cal. App. 4th 1006,

14  1013-14, 1026 (2005).  Similarly, in *Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1523-2-9 (1997),

15  the California Court of Appeals affirmed an injunction prohibiting the defendants from doing any

16  business with the former employer's customers who those defendants (1) previously had contact

17  with, or (2) about whom the defendants acquired information by way of the former employees.  *See*

18  *also Krapf Bus. Sys. v. Magnacontrol Corp.*, No. IP 79-334-C, 1979 U.S. Dist. LEXIS 10894, at

19  *19-22, (S.D. Ind. July 19, 1979) (entering an injunction where the defendants' competing business

20  "was started through an unfair advantage seized upon by an unfaithful employee [who

21  misappropriated trade secrets] with the full knowledge of the other defendants").

22         U.S. Bank seeks a temporary restraining order, or in the alternative a preliminary injunction,

23  to, among other things, prohibit Defendants from engaging in any further business activities to the

24  extent that Cresset's business is based upon or uses U.S. Bank Confidential Information, and to

25  return all Confidential Information to U.S. Bank.  That relief includes prohibiting Defendants from

26  soliciting U.S. Bank's employees and customers with whom Defendants worked or learned of by

27  way of U.S. Bank Confidential Information.  That relief is entirely consistent with California's

28

jurisprudence and is the only way to protect Ascent from irreparable harm.

### 2. U.S. Bank is Likely to Succeed on the Merits of its Claims for Breach of Fiduciary Duty.

U.S. Bank is likely to prevail on the merits of its breach of fiduciary claims. The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach. *Stanley v. Richmond*, 35 Cal. App. 4th 1070, 1086 (1995); *Global Med. Solutions, Ltd. v. Simon*, 2013 U.S. Dist. LEXIS 201502, at *44-45 (C.D. Cal. Sept. 24, 2013).  In addition, "an employer is entitled to its employees' 'undivided loyalty'" during the term of employment. *Fowler v. Varian Assocs., Inc.*, 196 Cal. App. 3d 34, 41 (1987) (*quoting Sequoia*, 229 Cal. App. 2d at 287). "The duty of loyalty is breached . . . when the employee takes action which is inimical to the best interests of the employer." *Stokes v. Dole Nut Co.*, 41 Cal. App. 4th 285, 295 (1995).

As an employee of Ascent, Cole owed a fiduciary duty to U.S. Bank, and breached that duty by, among other things, wrongfully soliciting U.S. Bank employees for the benefit of Cresset. Specifically, Cole materially breached his fiduciary duty when he solicited multiple U.S. Bank employees to join him at Cresset, a direct competitor.  Soliciting an employer's employees for a competitor while still employed constitutes a breach of fiduciary duty to the employer under California law.  *See GAB Business Servs., Inc. v. Lindsey & Newsom Claim Servs.*, 83 Cal. App. 4th 409, 424-425 (2000), *overruled on other grounds by Reeves v. Hanlon*, 33 Cal. 4th 1140 (2004) (holding that the former vice-president of a company who solicited co-workers to work for a competitor had breached his fiduciary duty); *Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327 (1966) (finding that plaintiff's president breached his fiduciary duty when, while still employed, he helped facilitate the solicitation of plaintiff's employers for a competitor that the employee later joined himself).

### C. U.S. Bank will Suffer Immediate and Irreparable Harm if Injunctive Relief is Not Granted.

A preliminary injunction should be issued where the moving party has demonstrated that irreparable injury is likely in the absence of the preliminary injunction. *Winter*, 555 U.S. at 22.  The

taking and dissemination of confidential U.S. Bank Confidential Information to set up a competing business has already caused and, unless enjoined, will continue to cause irreparable harm. This is the quintessential definition of irreparable harm. It provides Cresset an unfair advantage, and leaves U.S. Bank with damage that cannot be addressed simply by an award of money. Such intangible, but real, injuries generally lack an adequate legal remedy and qualify as irreparable harm supporting injunctive relief. *See Richmond Techs., Inc. v. Aumtech Bus. Sols.*, 11-02460C, 2011 U.S. Dist. LEXIS 71269, 2011 WL 2607158, at *22 (N.D. Cal. July 1, 2011) ("[T]o the extent that Defendants are using Plaintiff's trade secrets to compete with Plaintiff and to encourage Plaintiff's customers to switch their accounts . . . the Court agrees that Plaintiff has shown a likelihood of irreparable harm."); *H.Q. Milton, Inc. v. Webster*, No. 17-cv-06598-PJH, 2017 U.S. Dist. LEXIS 193646, at *12 (N.D. Cal. Nov. 22, 2017) (finding that misappropriation of customer and pricing information, use of that information, and threatened harm to plaintiff's reputation and customer goodwill each satisfied the irreparable harm requirement).

### D.     The Balance of Harms Tips in Favor of U.S. Bank.

In deciding whether to issue a preliminary injunction, the Court must consider the impact the injunction may have on each party. A preliminary injunction should issue where the harm likely to be suffered by the plaintiff outweighs the likely harm to the defendant as a result of the injunction. *Winter*, 555 U.S. at 24. The balance of hardships tips in the moving party's favor where the harm the moving party would suffer absent the injunction would be permanent while the harm to the non-moving party would be merely temporary. *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 765 (9th Cir. 2014).

The balance of hardships clearly weighs in favor of the injunctive relief. It cannot be disputed that Cole's misappropriations were unauthorized and extremely injurious, and that his wrongful solicitation of U.S. Bank employees was a breach of his duty to the Company and of his contractual obligations, resulting in the loss of employees and business and creating ongoing harms. Defendants built the Cresset Family Office using U.S. Bank's Confidential Information. If Defendants are permitted to retain and use U.S. Bank's Confidential Information to power its

-23-

business model and go after its business, even for a limited period, U.S. Bank will be harmed in the marketplace and with its clients.  The longer this is allowed to continue, the harder it will be to dislodge the taint of the Confidential Information that infects Cresset Home Office.  The ramifications to U.S. Bank are significant, especially given the significant amount of evidence already discovered regarding Cole's misappropriation and use of this information.  The balance of harms weighs strongly in U.S. Bank's favor.

By contrast, to the extent that the requested temporary restraining order restrains Defendants from using and orders them to return U.S. Bank Confidential Information, it does not burden Defendants at all.  It simply requires them to do what they are legally obligated to do.  To the extent that Cresset Family Office incurs any burden of restructuring their operations to dislodge U.S. Bank Confidential Information, it simply also requires them to do only what they are legally obligated to do.  Many competitors have grown in the marketplace using various business models and without misappropriating U.S. Bank Confidential Information without incurring any real burden.  Defendants simply request that Defendants be required to abide by the same rules as the rest of the marketplace.  *See Fid. Brokerage Servs. LLC*, 2017 U.S. Dist. LEXIS 145193, at *16-18 (balance of hardship weighed in favor of TRO where order did not bar defendant's right to provide service to potential customers, but barred defendant's use of plaintiff's confidential information to solicit such customer); *H.Q. Milton, Inc. v. Webster*, 2017 U.S. Dist. LEXIS 193646, at *14 (balance weighed in favor of TRO where plaintiff was still able to compete in the market, but was prevented from using confidential information to conduct their business).

Finally, to the extent the order asks Defendants to temporarily surrender any relevant computing devices for expedited forensic imaging, and otherwise maintain the status quo, the burden is minimal.  Courts regularly grant such injunctive relief to require those who misappropriated that information to submit their personal devices and accounts for forensic examination to ensure the protection of confidential and trade secret information.  *See, e.g.*, *Earthbound Corp. v. MiTek USA, Inc.*, No. C16-1150 RSM, 2016 U.S. Dist. LEXIS 110960; 2016 WL 4418013 (W.D. Wash. Aug. 19, 2016); *Dexon Computer, Inc. v. Modern Enterp. Solutions,*

-24-

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR
TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, PRELIMINARY INJUNCTION

1    *Inc.*, No. 27-CV-15-17171 (Minn. Dist. Ct., Henn. Cty. Dec. 28, 2015).    Defendants' decision to

2    falsely deny their wrongdoing in response to U.S. Bank's inquiry completely undermines this

3    Court's and U.S. Bank's ability to rely on any future certification or representation Defendants'

4    may make that they have returned or will not misuse U.S. Bank's Confidential Information.    Any

5    minimal burden is more than outweighed by the need to ensure the protection of the Confidential

6    Information and, moreover, to preserve key evidence that Defendants misappropriated that

7    Information.    Thus, the balance of the harms favors U.S. Bank's request for a temporary injunction.

8    **E.    Injunction is in the Public Interest.**

9    Granting the temporary restraining order is also in the public interest. Courts have found

10   that "the public has an interest in requiring parties to honor their contractual obligations." *Seed*

11   *Servs., Inc.*, 868 F. Supp. 2d at 1005-06 (*citing Dunkin' Donuts Franchised Rests. LLC v. ABM*

12   *Donuts, Inc*. 2011 U.S. Dist. LEXIS 139074 (D.R.I. Oct. 4, 2011)).    Moreover, there is a strong

13   public interest in protecting confidential information and stopping unfair competition. *See Netlist*

14   *Inc. v. Diablo Techs., Inc.*, 2015 U.S. Dist. LEXIS 3285, at \*32 (N.D. Cal. Jan. 12, 2015) ("There

15   is also a public interest in favoring an injunction against the unfair competition that arises from

16   improper use of such confidential information."). By comparison, there is no public interest in

17   rewarding a former employee who breaches contracts and engages in unlawful self-help in order to

18   further his own business interests.[1]

19   **IV.    CONCLUSION**

20   The Court should issue an order to temporarily enjoin Cole and Cresset from further

21   unlawful acts and require them to return the materials wrongfully taken from U.S. Bank.

22   _____

23   [1]    Although security is a condition for injunctive relief, the Court only need order the giving of security in an amount the court deems proper.  Fed. R. Civ. P. 65(c).  When the person to be enjoined would suffer no harm, the Ninth Circuit has held waiver of the bond requirement appropriate. *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009).  Courts have specifically found there to be no realistic threat of harm to Defendants who are enjoined from using misappropriated confidential information, and thus held no security to be required for the preliminary injunction to issue. *Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1078 (N.D. Cal. 2016) (holding that "no bond should be required because the TRO will not cause any damage to [defendant]'s legitimate business"); *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, No. 2:13-cv-00784-MCE-DAD, 2013 U.S. Dist. LEXIS 70098, at \*43-44 (E.D. Cal. May 16, 2013).

-25-

1    Dated:  September 28, 2018              DORSEY & WHITNEY LLP

2

3                                           By */s/ Jessica Linehan*
                                            JESSICA LINEHAN  SBN 223569
4                                           Dorsey & Whitney LLP
                                            600 Anton Boulevard, Suite 2000
5                                           Costa Mesa, CA 92626
                                            Telephone:     (714) 800-1400
6                                           Facsimile:     (714) 800-1499
                                            E-Mail:        linehan.jessica@dorsey.com
7

8                                           EDWARD B. MAGARIAN
                                            Admitted in State of Minnesota SBN 208796
9                                           Pro hac vice motion pending
                                            SAM BOLSTAD
10                                          Admitted in State of Minnesota SBN 397387
                                            Pro hac vice motion pending
11                                          Dorsey & Whitney LLP
                                            50 South Sixth Street, Suite 1500
12                                          Minneapolis, MN  55402
                                            Telephone:     (612) 340-2600
13                                          Facsimile:     (612) 340-2868
                                            E-Mail:        magarian.edward@dorsey.com
14                                          E-Mail:        bolstad.sam@dorsey.com
15

16                                          *Attorneys for Plaintiff U.S. Bank National*
                                            *Association*
17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS APPLICATION FOR
TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, PRELIMINARY INJUNCTION