BARRY P. KALTENBACH
kaltenbach@millercanfield.com
(Admitted in State of Illinois SBN 6270034)
Pro hac vice motion to be filed
STEVEN J. ROTUNNO
rotunno@millercanfield.com
(Admitted in State of Illinois SBN 3122500)
Pro hac vice motion to be filed
MILLER CANFIELD
225 W. Washington, Suite 2600
Chicago, Illinois 60606
Telephone: (312) 460-4261
Facsimile: (312) 460-4201

GREG GLAZER (SBN 172197)
gglazer@hkemploymentlaw.com
CHINA M. WESTFALL (SBN 300982)
cwestfall@hkemploymentlaw.com
HIRSCHFELD KRAEMER LLP
505 Montgomery Street, 13th Floor
San Francisco, CA 94111
Telephone: (415) 835-9000
Facsimile: (415) 834-0443

Attorneys for Defendants
CRESSET CAPITAL MANAGEMENT,
CRESSET ASSET MANAGEMENT,
CRESSET FAMILY OFFICE, and MICHAEL COLE

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

U.S. Bank National Association,

Plaintiff,

vs.

Cresset Capital Management, Cresset Asset Management, Cresset Family Office, and Michael Cole,

Defendants.

Case No.: 3:18-cv-05977-EMC

**DEFENDANTS' RESPONSE TO MOTION FOR TEMPORARY RESTRAINING ORDER**

Complaint Filed: September 28, 2018

## I. INTRODUCTION

U.S. Bank is attempting to stifle competition of former employees who are dissatisfied with the Bank, who have honored their obligations to U.S. Bank, and who want to be part of an

independent employee owned firm providing services to ultra-high net worth families. To do this, U.S. Bank attempts to paint a sinister picture of Michael Cole (and, therefore, Cresset) but overlooks its own ineptitude in running its Ascent office. Upset with a smaller competitor who has been able to hire some of the best and brightest minds in the industry, to innovate and create a new business model, U.S. Bank is trying to shut down both Mr. Cole and Cresset. After Mr. Cole tendered his resignation, U.S. Bank asked him to stay on for two (2) additional weeks and continue to function as Ascent's President, and yet now – three (3) months later – complains that during this period he accessed U.S. Bank's confidential information. U.S. Bank's Motion should be denied because U.S. Bank has failed to establish that there is an emergency requiring the extraordinary remedy of a temporary restraining order. Indeed, the undisputed evidence shows that U.S. Bank has not acted with any urgency and, inexplicably, sat by for three (3) months doing nothing before deciding to file its lawsuit on a Friday afternoon and then wait until Friday night before sending copies of its materials to Defendants' counsel. This has forced Defendants to scramble over the weekend in an attempt to respond to U.S. Bank's voluminous filings, even though as of Monday morning, U.S. Bank still has not provided Defendants' counsel with many of the exhibits to its Complaint.

Regardless, U.S. Bank fails to establish a likelihood of success on the merits. It repeatedly argues that Michael Cole accessed information it considers to be confidential, but does not establish that the Defendants used that information, conflates confidential information with trade secrets, and fails to establish how the information in question qualifies as a trade secret. U.S Bank does not argue that Defendants have somehow damaged its ability to access its own confidential information going forward, nor does U.S. Bank establish that it has lost a single dollar because of Defendants' alleged use of its purportedly confidential information. U.S. Bank points to a single employee (Janet Farren) who it alleges Mr. Cole improperly solicited while still employed at

Ascent, but the identity of this employee is not confidential information and Mr. Cole did not, in any event, solicit her. Likewise, although U.S. Bank implies that Defendants solicited six (6) other employees, U.S. Bank has no evidence of this and bases its argument in unsupported speculation which is easily disproven.

U.S. Bank hired Michael Cole, who constructed and operated two family office businesses for Merrill Lynch Trust and for Wells Fargo Bank's Abbot Downing division, to create and run the business of Ascent because of his experience and expertise in providing financial services to ultra-high net worth and high net worth multi-generation family offices – indeed, Mr. Cole quite literally wrote the book on this subject. (See Exhibit 1 to Mr. Cole's Affidavit.) Now, U.S. Bank seeks to stop a smaller, employee-owned competitor that is not a bank but an independent Registered Investment Advisory (RIA) firm from competing with it; U.S. Bank does not want Michael Cole to do for Cresset what it did for U.S. Bank, and for Wells Fargo prior to his arrival at U.S. Bank. For all of these reasons, the Motion should be denied.

## II. THERE IS NO EMERGENCY – U.S. BANK DID NOTHING FOR 3 MONTHS

On June 15, 2018, Michael Cole tendered his resignation to his boss, Mark Jordahl, and specifically told Mr. Jordahl that he was leaving to start an independent, employee-owned investment advisory firm platform for families at Cresset, which would compete with the Bank. (See Affidavit of Michael Cole, ¶7) Mr. Jordahl, knowing full well that Mr. Cole was going to take a job to run a direct competitor, requested that Mr. Cole nonetheless stay on until the end of June 2018, and continue to perform his job duties as President of Ascent. (See Cole Affidavit, ¶7.) During the following two weeks, Ascent notified its key employees that Mr. Cole was leaving to go to Cresset. (See Cole Affidavit, ¶7.) At the *specific request* of Ascent, Mr. Cole continued to perform his job duties, and Ascent continued to grant him the same access to its company information, whether confidential or non-confidential, that he had before he tendered



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

his resignation. (See Cole Affidavit, ¶7.) Ascent took no steps to limit his access to any of its company information, apparently failed to monitor what Mr. Cole was doing, and Mr. Cole's access was necessary to continue to operate Ascent's business. (See Cole Affidavit, ¶¶7, 9.) However, as Mr. Cole's affidavit states: **he did not take confidential information.**

After Mr. Cole actually left on June 29, 2018, U.S. Bank did nothing for over five (5) weeks before sending a letter to Defendants' counsel on August 6, 2018, advising that U.S. Bank was investigating Mr. Cole's departure from Ascent. (Motion at 17:7-11.) Counsel promptly responded on August 9, 2018, and (quite accurately) advised that Mr. Cole had not solicited any of his former coworkers and that he did not misappropriate any trade secrets or confidential information. (Motion at 17:11-20.) U.S. Bank then waited another seven (7) weeks before filing this lawsuit on the afternoon of Friday, September 28, 2018. U.S. Bank's filed documents do not appear to be hastily thrown together, and it stands to reason U.S. Bank spent considerable time preparing them.

After filing its papers earlier in the day on Friday, U.S. Bank did not send any notification to Defendants' counsel that it had filed suit until almost 7:00 p.m. Pacific Time (9:00 p.m. Central Time, where Defendants' counsel is located), and did not email the actual documents it was filing for about another half-hour. Defendants' counsel had to scramble on Saturday, September 29, 2018, to confirm they were representing all of the Defendants for purposes of the lawsuit and secure local counsel. This left the Defendants one day, Sunday, September 30, 2018, to begin working on a response and securing affidavits from potential witnesses. As of Monday, October 1, 2018, U.S. Bank still has not provided copies of its sealed exhibits to Defendants.

In total, U.S. Bank waited for three (3) months *after* Mr. Cole's final day at Ascent before filing this lawsuit. Nowhere in its Motion does U.S. Bank explain this delay – perhaps U.S. Bank was waiting for the results of a forensic examination of Mr. Cole's computer, but U.S. Bank

provides absolutely no information on the timing of this examination. U.S. Bank has not demonstrated that this matter requires this Court's emergency intervention or why U.S. Bank needs the Defendants to have less than one (1) business day to respond to its request for a temporary restraining order. The total absence of an emergency – particularly given that U.S. Bank sat on its hands for three (3) months – warrants total denial of the Motion.

## III. MICHAEL COLE AND CRESSET

Mr. Cole has been in the financial services industry for long before he joined U.S. Bank/Ascent, indeed for over 25 years, and has led businesses who provide financial services to ultra-high net worth individuals and families. (See Cole Affidavit, ¶¶3-5.) U.S. Bank did not teach Mr. Cole what he knows – rather, before joining Ascent, Mr. Cole was President of Merrill Lynch Trust and thereafter headed Abbott Downing (formerly known as The Family Wealth Group), a subsidiary of Wells Fargo Bank. (See Cole Affidavit, ¶¶3-5.) At these organizations, Mr. Cole *created* the business plans and models used to service ultra-high net worth families. (See Cole Affidavit, ¶3.) It is *because* of his established success that U.S. Bank hired him to create and run Ascent; he was the first employee of Ascent, primarily hired all of its subsequent employees from other competitors, and developed Ascent's strategy and business model. (See Cole Affidavit, ¶¶3-5.)

While employed at Ascent, and in 2017, Mr. Cole published a book, *More Than Money*, portions of which are attached to his Affidavit, describing how ultra-high net worth families consider their financial situations and how a business can assist them. (See Cole Affidavit, ¶6.) Mr. Cole, quite literally, wrote the book on doing his job. U.S. Bank cannot make any claim that this information – the "how-to" of running a business servicing multi-generational ultra-high net worth families – is its confidential information or its trade secret. Indeed, U.S. Bank specifically advised Mr. Cole that he needed to explain that the information in the book was his, and not U.S.



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Bank's. (See Cole Affidavit, ¶6.)

Cresset hired Mr. Cole to do the same thing that U.S. Bank hired Mr. Cole to do – develop and run its business model to provide financial services for multi-generational high net worth families.[1] Cresset was in this business before it hired Mr. Cole, although it certainly expects Mr. Cole to run this line of business – a business which U.S. Bank now seeks to shut down. (See Affidavit of Eric Becker, ¶3.) Prior to hiring Mr. Cole, Cresset hired other executives with experience servicing multi-general high net worth families, including Kevin Long, another executive from Abbott Downing, one of the largest such advisors in the nation, Doug Regan, who spent twenty seven (27) years at Northern Trust and five (5) years heading Northern Trust's Family Office practice. and other key personnel. (See Becker Affidavit, ¶7.)

## IV. U.S. BANK HAS NOT SHOWN A LIKELIHOOD OF SUCCESS ON ITS CLAIM THAT MICHAEL COLE SOLICITED FORMER CO-WORKERS

In accordance with well-established California law, U.S. Bank cannot sustain a claim that Mr. Cole is prohibited from soliciting his former co-workers to join him at Cresset. Indeed, his contractual obligation is only that he cannot use U.S. Bank's Confidential Information in order to solicit his former co-workers. (See Verified Complaint, Exhibit 1, § 6.) The identity of his former co-workers is neither confidential information nor a trade secret. Accordingly, U.S. Bank has not established a likelihood of success on its assertions that Mr. Cole's alleged solicitation of these individuals violates contractual obligations or any aspect of California or federal trade secret laws.

U.S. Bank is, thus, left with an argument that while still employed at Ascent, Mr. Cole violated his fiduciary obligations to solicit his co-workers. Of course, this cannot form the basis of prospective injunctive relief in this case as there is no risk of future harm, as Mr. Cole has not

[1] However, Cresset is not a bank, but an employee-owned RIA firm that can offer direct private investments to clients, which a bank cannot do; it does not lend money like U.S. Bank.



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

worked for Ascent for over three (3) months. Moreover, as Mr. Cole attests in his Affidavit, he did *not* solicit his co-workers while employed at Ascent. (See Cole Affidavit, ¶¶13-14.) In further support of his own testimony, see also the Affidavits of Janet Farren, Chau (Sisi) Tran, Will Amerine, Scott Winget, Mark Foster, Martim de Arantes Oliveira and Thomas Crotty, wherein each testifies that Mr. Cole did not solicit them to either leave Ascent or join him at Cresset.

U.S. Bank points to a single email from one of these individuals, Janet Farren, wherein she emailed a friend and professional colleague living in Australia that she had an "unofficial offer" from Mr. Cole. (Motion at 15:23.) As Ms. Farren explains in her Affidavit, she has worked with Mr. Cole closely for almost eighteen (18) years and knew that if Mr. Cole left Ascent, she was not going to stay; she describes Mr. Cole as a "visionary leader" and that they had an unspoken understanding that they would always work together if possible. (See Farren Affidavit, ¶6; see also Cole Affidavit, ¶14.)

Ms. Farren considered retiring from U.S. Bank and actually contacted U.S. Bank Human Resources to begin that process, something U.S. Bank neglects to include in its submissions to this Court. (Farren Affidavit, ¶6.) Another option was for her to see if there was a future for her at Cresset, and she approached Mr. Cole to inquire about this possibility – he did not approach her. (Farren Affidavit, ¶¶7-10.) Mr. Cole told her to explore Cresset if she was interested in doing so. (Farren Affidavit, ¶¶7-10.) Mr. Cole did not make her an actual job offer and did not discuss a possible position or possible compensation. (Farren Affidavit, ¶¶7-10.) Ms. Farren plainly states that she was not solicited by Mr. Cole. (Farren Affidavit, ¶¶7-10.)

## V. U.S. BANK HAS NOT ESTABLISHED A LIKELIHOOD OF SUCCESS THAT MICHAEL COLE MISAPPROPRIATED OR USED OTHER PURPORTED TRADE SECRETS

U.S. Bank's Verified Complaint and Motion is replete with allegations and argument that Mr. Cole *accessed* confidential information while still employed at Ascent. (See VC, ¶¶31-60.)

This completely overlooks that *U.S. Bank hired Mr. Cole as President of Ascent to operate the business and it specifically asked Mr. Cole to stay on as its President after he advised he was leaving for a small, employee-owned competitor*. Mr. Cole was the President of Ascent through the date of his departure on June 29, 2018, and had legitimate access to, and a need to access, the confidential information. (See Cole Affidavit, ¶¶7-8.) It is grotesquely unfair for U.S. Bank to accuse Mr. Cole of accessing confidential information after specifically asking him to continue working in a job that required him to access confidential information. Also missing is any allegation by U.S. Bank that Mr. Cole *actually used* any of this information to harm U.S. Bank or for Cresset's business.

U.S. Bank either misunderstands or purposefully ignores California and federal law governing trade secrets. U.S. Bank wrongfully – yet boldly – proclaims in its Verified Complaint that *all* of its confidential information constitutes a trade secret. (See VC, ¶64.) District courts in California have recognized that, "the definitions of trade secret and misappropriation are virtually the same in both the federal DTSA, 18 U.S.C. § 1839, and the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426.1. *See Waymo LLC v. Uber Techs., Inc.*, No. C 17-939 WHA, 2017 U.S. Dist. LEXIS 73843, 2017 WL 2123560, at *7 (N.D. Cal. May 15, 2017); *Elinor Shapiro v. Hasbro, Inc.*, No. CV 16-5750-BRO (AJWx), 2016 U.S. Dist. LEXIS 194684, 2016 WL 9024810, at *7 (C.D. Cal. Aug. 15, 2016). Accordingly, federal district courts in California have applied California's trade secret case law to causes of action brought under the federal DTSA. See *Vendavo*, 2018 U.S. Dist. LEXIS 48637, 2018 WL 1456697, at *3 ('The elements of a trade secret misappropriation claim under the DTSA are substantially similar to those under older state statutes.')." *Founder Starcoin, Inc. v. Launch Labs, Inc.* (S.D.Cal. July 9, 2018) 2018 U.S. Dist. LEXIS 113737, at *10. General knowledge, and special knowledge of those skilled in their profession are not trade secrets; idea and concepts are not trade secrets, and the ways of doing the



HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

same thing that others in the same field do are not trade secrets. *Agency SolutionsCom LLC v. TriZetto Group Inc.*, 819 F. Supp. 2d 1001, 1017 (E.D. Cal. 2011).

"For purposes of preliminary injunction, the party seeking injunctive relief must 'describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies.' *Diodes, Inc. v. Franzen*, 260 Cal. App. 2d 244, 253, 67 Cal. Rptr. 19 (1968). The obligation to identify alleged trade secrets with specificity serves the needs of the court in addition to the defendant. In *Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161 (9th Cir. 1998), the Ninth Circuit held that the district court properly rejected a claim that information was a trade secret where the plaintiff 'failed to carry its burden of identifying for the court' exactly what information was claimed to be a trade secret. *Id.* at 1167-1168*; see also Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F.Supp. 1170, 1177 (C.D. Cal. 1989) (plaintiff failed to inform defendant or the court 'precisely which trade secret it alleges was misappropriated'), aff'd, 914 F.2d 1256 (9 Cir. 1990). A district court can therefore reject a claim that information is a trade secret *sua sponte* if the information is not identified by the claimant with sufficient particularity to allow the court to determine what the information is." *Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F.Supp.2d 1001, 1017 (E.D.Cal. 2011); *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 522-23 (9th Cir. 1993) (permanent injunction vacated based on Plaintiff's failure to specifically identify trade secrets); *Agency SolutionsCom*, 819 F. Supp. 2d at 1020 ("Just as bare assertion of a legally required element is insufficient for purposes of pleading a claim for relief, so too the bare assertion that a document represents "proprietary insight" or "know how" or is a "trade secret" is insufficient to carry the burden to show that is the case.").

U.S. Bank has failed to establish, with the particularity required under the law, how all of its confidential information is also a trade secret and that Cole misappropriated the information. U.S. Bank cannot complain that his mere *access* of confidential information was impermissible or unlawful in any manner. Certainly, Cole has not used this information to solicit other Ascent employees (as demonstrated above), and he has not used it to solicit Ascent customers. As he attests, he has not solicited a single Ascent customer. (See Cole Affidavit, ¶12.) Mr. Cole did download a list of his Ascent customers, because he thought it was permissible so long as he did not actually contact those customers. (See Cole Affidavit, ¶26.) He has not, in fact, contacted those customers and has no quarrel with deleting and returning this list. (See Cole Affidavit, ¶26.)

While Mr. Cole had access to U.S. Bank's confidential information, he does not need this confidential information to perform his job at Cresset. (See Cole Affidavit, ¶18.) With respect to U.S. Bank's argument that Mr. Cole used Ascent's membership in FOX to misappropriate industry data (Motion at 5), U.S. Bank does not elaborate or explain how information found compiled by a third-party (FOX) and available for sale to others can constitute U.S. Bank's confidential information, or be a trade secret of U.S. Bank. This is akin to a law firm arguing that the information on Westlaw constitutes its trade secret because the law firm subscribes to Westlaw. Regardless, as explained in the Becker Affidavit, Cresset had access to this same information and would never have needed Mr. Cole to access it or use it on behalf of Cresset. (See Becker Affidavit, ¶4; Cole Affidavit at ¶11.)

U.S. Bank asserts that Mr. Cole is using its confidential information to start up the Cresset Family Office and, indeed, the gist of U.S. Bank's accusations is that Mr. Cole is going to replicate the success he had with U.S. Bank (when it hired him away from Wells Fargo) with Cresset. (See VC, ¶7.) As Mr. Cole attests, however, he did not collect or utilize U.S. Bank's confidential information to start up and run Cresset Family Office. (See Cole Affidavit, ¶18.) He

is using his long-standing and pre-existing knowledge and experience, and the ideas and concepts set forth in the book he published while at U.S. Bank (which U.S. Bank does not and cannot assert constitutes its confidential information), *More Than Money*, to organize and run Cresset Family Office. (See Cole Affidavit, ¶18.) Because Cresset is a non-bank registered investment advisory firm that can offer private investments to its clients, U.S. Bank's confidential information would not be particularly usable by Cresset in any event. (See Cole Affidavit, ¶18.)

U.S. Bank also suggests that there is something sinister about Mr. Cole accessing his online Ascent biography, or conducting internet searches about Cresset. (See VC, ¶5; Cole Affidavit, ¶16.) Of course, his online biography and publicly available information about Cresset cannot constitute a trade secret (nor even confidential information) belonging to U.S. Bank.

U.S. Bank equally makes sinister-sounding accusations that Mr. Cole used a USB drive on five (5) occasions in the two weeks prior to this departure. As Mr. Cole attests, he maintained files on his work computer that contained personal financial information, including his tax returns. (See Cole Affidavit, ¶10.) Accordingly, beginning on June 11, 2018 (just a few days before he officially announced his resignation), he began the process of moving these materials to his USB drive for the purpose of transferring them to his home computer, because, for security reasons, he did not want to just email them to himself. (See Cole Affidavit, ¶10.) Notably, the last date identified that he used an USB drive is June 29, 2018 – they day he left and two (2) weeks *after* he announced his resignation. (See Cole Affidavit, ¶10.) For this entire two (2) week period, U.S. Bank knew that he was leaving and had every opportunity to disable his ability to use USB drives or more specifically monitor what he was downloading – but U.S. Bank again chose to do nothing and now uses its own [in-]action to accuse Mr. Cole of wrongdoing based on innuendo and speculation about what he might have done. Mr. Cole also attests, for his part, that he never forwarded any of the information he transferred to his home computer to Cresset. (See Cole

Affidavit, ¶10.)

U.S. Bank accuses Mr. Cole of using its confidential information in a PowerPoint presentation during a meeting with Cresset in May 2018. As Mr. Cole attests, he did not use U.S. Bank's confidential information at this meeting. (See Cole Affidavit, ¶¶20-23.) The PowerPoint presentation contains information from his book and from other publicly-available sources, as is frequently noted on the slides. (See Cole Affidavit, ¶¶20-23.) Some of the material in the "Ascent Placemat" was taken from the Ascent computer system, but it was not confidential or proprietary to Ascent; the slides at issue show the type of services a family office can offer, but this is well-known in the industry and is available online at a variety of sources. (See Cole Affidavit, ¶23.)

Despite having months to develop its case, U.S. Bank has utterly failed to establish with particularity how the purportedly confidential information it identifies constitutes a trade secret, that Mr. Cole actually used this confidential information to hurt U.S. Bank, or that there is a threat of harm to U.S. Bank in the future from the use of this information. For these further reasons, this Court should deny U.S. Bank's Motion.

DATED: October 1, 2018

MILLER CANFIELD

By_______________________
Barry P. Kaltenbach
Steven J. Rotunno
Attorneys for Defendants
CRESSET CAPITAL MANAGEMENT, CRESSET ASSET MANAGEMENT, CRESSET FAMILY OFFICE, and MICHAEL COLE

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO